CORA BRANHAM, APPELLANT, v. SUSIE K. AYERS, APPELLEE.

FILED APRIL 13, 1934. No. 28855.

*Field, Ricketts & Ricketts* and *Sullivan & Wilson,* for appellant.

*G. E. Hager* and *W. B. Price, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and Carter and Chappell, District Judges.

CARTER, District Judge.

This suit was commenced by plaintiff to recover from the defendant as executrix of the estate of George Ayers, deceased, one-half of the personal property of said estate.

The evidence shows that George Ayers died on February 7, 1927, leaving a will that contained the following provision: "I give, devise and bequeath to my wife and sisters my personal property." The evidence further shows that the said George Ayers left surviving him his wife, two minor children, three brothers, and one sister, the plaintiff herein. It also appears from the evidence that, soon after the death of George Ayers, the defendant employed an attorney to represent her who, at the direction of defendant, prepared an assignment and transfer of plaintiff's interest in said estate to the defendant, Susie K. Ayers, the wife of George Ayers, deceased; that defendant's attorney, intending to defraud plaintiff, failed to notify plaintiff of her interest in said estate, the nature· and extent thereof, or that deceased had executed a will or that plaintiff was a legatee therein. It further appears that said attorney represented to plaintiff that said as-

signment and transfer were merely for the purpose of administering said estate with greater facility and at less cost; and in order to induce her, without inquiry, to execute said assignment, he represented that the brothers and relatives of plaintiff had executed a like instrument and that none of said parties had any interest in said estate; that defendant's attorney also represented that, in any event, under the laws of Nebraska all the property would descend to and vest in defendant and her children, and thereby, in effect, represented and led plaintiff to believe that she had no interest in said estate. Plaintiff alleges that she believed said false statements and, relying thereon, signed the assignment and transfer and delivered it to defendant's attorney. She further alleges that she did not learn of said false representations and fraud until March 10, 1928, which is within four years from the date of the filing of this suit. The defendant alleges in her answer that the assignment and transfer is valid and also pleads the statute of limitations. From a decree finding for the defendant, the plaintiff brings this appeal.

The letter upon which plaintiff relied in executing and delivering the assignment and transfer is as follows:

"You have no doubt been notified of the death of your brother George, who died in this city February 6.

"George in the bigness of his heart had insurance written for all his relatives including yourself. I am very glad that he did so.

"He left some personal property which is presented by his interest in the store (and of course he left his home) which will be for his wife, but in order to adjust matters without expense so that Mrs. Ayers can have the use and benefit of the personal property, his brothers have all signed an exact duplicate of the 'Assignment and Transfer' I hand you hoping that you also will sign and acknowledge it before some notary public. This will be of great help to Mrs. Ayers and the children and will also leave the store proposition so that no complications can arise.

"I hope you will execute this at once and return to me. I will be glad to remit whatever expense you are to; I hand you self-addressed stamped envelope for an immediate return that I may know just what to do, if it becomes necessary I will be obliged to go into the administration of the estate differently from what will be needed in case this assignment and transfer is executed.

"I have also sent one to Verne Luce and I expect that he will sign it. This is not necessary only for the purpose of overcoming any possible claim that might be made to the estate by any of the parties, for under the law of this state Mrs. Ayers and these children can and will hold the property. Thanking you in advance for an immediate attention, I am, truly yours."

That this letter deceived and misled the plaintiff as to the facts and induced her to sign away her rights without knowledge of the facts cannot be questioned. Plaintiff lived at Junction City, Oregon, and had no other facts before her except the letter in question. We hold, therefore, that the letter was fraudulent as to this plaintiff and will be so treated herein, and, unless the statute of limitations is a bar, the assignment could be set aside.

The only question left for determination is whether plaintiff's claim is barred by the statute of limitations. Section 20-207, Comp. St. 1929, provides in part: "Within four years, * * * an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." Plaintiff signed the assignment and transfer on March 5, 1927, and this suit was commenced on September 8, 1931. Plaintiff, however, pleads that she did not discover the fraud until March 10, 1928. If the plaintiff first discovered the fraud or was put on inquiry within the meaning of the law after September 8, 1927, and not before, she would be entitled to the relief prayed for; if prior to that date, the action would be barred by the statute of limitations.

The evidence of the plaintiff as to the time of the discovery of the fraud is substantially as follows: On March 5, 1927, the date of the signing of the assignment, plaintiff wrote to Attorney N. T. Gadd, of Broken Bow, Nebraska, as follows: "I complied with your wish and I have a request to make to you and that is to send me a copy of my brother George's will. I will be very thankful to you if you will kindly do this." Plaintiff testifies that she never heard from Mr. Gadd, nor did she get a copy of the will from him. Plaintiff testifies that in the month of July of the same year she was in Broken Bow for a few days, but made no inquiry of defendant or any one else concerning the will. She states she went on east to Sabetha, Kansas, and returned to Broken Bow on her way home the latter part of October of the same year, at which time nothing was said by the defendant or other relatives concerning the will. She does testify, however, that her husband examined the records at the courthouse and informed her that she was mentioned in the will, and, on her return to Oregon, she had an attorney write to the county judge of Custer county for a copy of the will which she received on March 10, 1928. Her testimony also shows that, several years before the death of George Ayers, he told plaintiff that he would remember her. This constitutes practically all the evidence as to plaintiff's knowledge of the fraud.

Plaintiff knew on March 5, 1927, that her brother George had left a will. She also knew that he had intended to remember her, as she testified to this herself. On March 5, 1927, she wrote for a copy of the will, undoubtedly because she knew facts that caused her to believe that she would be mentioned therein. Even the letter of defendant's attorney, fraudulent as it is, did not lull her into an absolute belief that she was not mentioned therein, otherwise she would not have been interested in obtaining a copy of the will. She also knew that the estate of her brother was being probated in Custer county

and that an inquiry of the county court would have brought the desired information. Plaintiff was in Broken Bow in July of 1927, and made no inquiry of the court or of relatives. If she had made any reasonable inquiry she would have discovered facts that would have disclosed the fraud. If plaintiff had followed up the letter to Mr. Gadd, when he failed to reply, with a letter to the county court, the whole matter would have been disclosed. The whole affair was a matter of public record. The negligence of plaintiff in looking after her interests before and after September 8, 1927, is beyond comprehension. We assume that she is a reasonably intelligent and prudent woman. There is at least no evidence to the contrary. She was in possession of facts that should have placed her on inquiry. She had every opportunity to make inquiry, but negligently failed to do so.

This court has held in the case of *Welton v. Merrick County,* 16 Neb. 83, in an opinion by Judge Maxwell: "If a party with ordinary care and attention could have detected even fraud, he will be charged with actual knowledge of it; that is, the mere fact that a party is not aware of the existence of certain matters, where there is no concealment, will not prevent the running of the statute of limitations."

This court has also held: "An action for relief on the ground of fraud may be commenced at any time within four years after a discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery." *Parker v. Kuhn,* 21 Neb. 413. See *Marshall v. Rowe,* 119 Neb. 591.

The plaintiff had knowledge of facts that not only should have, but did, put her on an inquiry according to her own evidence. The fact that she did not get an answer to her first inquiry will not permit her to negligently sit by and make no further effort to discover the fraud.

The question as to plaintiff's knowledge of facts which should put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to a discovery of the fraud, is a question of fact to be determined from all the evidence. No general rule can be announced covering all cases, but it is a question to be determined from the evidence and circumstances of each particular case.

The appellant argues that the statute of limitations can never be used in a court of equity to sustain a fraud, wrong or injustice and that this statute must be positively and absolutely established. The reason for the existence of a statute of limitations overcomes the argument. Negligence and lethargy are condemned by the law. In the case of *Wood v. Carpenter,* 101 U. S. 135, Justice Swayne says: "Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and the antidote go together."

We therefore hold that, under the facts and circumstances of this case, the trial court was right in holding that plaintiff's claim was barred by the statute of limitations. For the reasons herein set out, the judgment of the trial court is

AFFIRMED.